## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SEIU HEALTHCARE PENNSYLVANIA,  :
CTW, CLC,                       :
                                :
                    **Plaintiff** :          **3:13-CV-02669**
        v.                      :          **(JUDGE MARIANI)**
                                :
REGIONAL HOSPITAL              :
  OF SCRANTON,                 :
                                :
            **Defendant**       :

### MEMORANDUM OPINION

### I. Procedural History

In this action, Plaintiff, SEIU Healthcare Pennsylvania, CTW, CLC (hereinafter "SEIU" or "the Union") has filed suit to confirm and enforce a labor arbitration award issued pursuant to SEIU's Collective Bargaining Agreement with Defendant, Regional Hospital of Scranton (hereinafter "Hospital").

This Court has jurisdiction pursuant to Section 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a) and 28 U.S.C. §§ 1331 and 1337.

Venue is proper in the Middle District of Pennsylvania pursuant to 29 U.S.C. § 1391, since the Defendant is located in this judicial district and because a substantial part of the events giving rise to the claimant in this case occurred in the Middle District.

As noted above, SEIU and Regional Hospital of Scranton, hereinafter "Hospital", were parties to a Collective Bargaining Agreement ("CBA") for the period November 10,

2011 through February 28, 2013. A copy of the Collective Bargaining Agreement, without its Appendices, is attached to Plaintiff's Complaint as Exhibit A. (Doc. 1-2). The Union and the Hospital agree that upon the expiration of the Collective Bargaining Agreement, they are "operating under the terms of the CBA, consistent with applicable labor law, while they continue to bargain for a successor agreement." (Compl., Doc. 1, ¶ 6; Answer, Doc. 9, ¶ 6).

The Collective Bargaining Agreement between SEIU and the Hospital contains, in Section 4.1 thereof, a grievance procedure which provides for the submission of unresolved disputes between the Union and the Hospital to arbitration. Specifically, Section 4.3 of the CBA provides for the submission of an unresolved grievance to arbitration by the Union filing a written demand for arbitration with the American Arbitration Association. Thereafter, an arbitrator is chosen in accordance with the Rules and Regulations of the American Arbitration Association.

Section 4.6 of the CBA provides:

> The award of an arbitrator hereunder shall be final, conclusive and binding upon the Hospital, the Union and the employees including all disputes regarding Management's application of the Americans with Disabilities Act.

(Doc. 1 at ¶ 9; Doc. 9 at ¶ 9; Doc. 1-2).

Further, the Collective Bargaining Agreement provides, in Section 5.1 thereof, that "[t]he Hospital shall have the right to discharge, suspend or discipline any employee for just cause." (Doc. 1-2, p. 8).

2

On February 1, 2012, the Hospital suspended bargaining unit employee, Roberta Robbins, who, the Hospital asserted, had been sleeping on the job. (Compl. at ¶ 15; Answ., Doc. 9, ¶ 15).

On February 3, 2012, the Hospital terminated the employment of Roberta Robbins on the claim that she had been sleeping on duty during the night of February 1, 2012. (Compl. at ¶ 16).

The Union filed a Grievance on behalf of Ms. Robbins which asserted that Ms. Robbins had been discharged without just cause and that her discipline was imposed without the interview provided for in Section 5.2 of the Collective Bargaining Agreement. (*Id.* at ¶ 17).

When the parties were unable to resolve the Robbins Grievance, it was submitted to arbitration. Arbitrator Scott E. Buchheit was appointed  to serve as the Neutral Arbitrator to hear and decide the Grievance. (*Id.* at ¶ 19).

Arbitrator Buchheit held a hearing on December 11, 2012, at which the Union and the Hospital presented evidence and testimony in support of their respective positions. The parties submitted post-hearing briefs at the conclusion of the hearing. (*Id.* at ¶ 20).

On April 26, 2013, Arbitrator Buchheit issued his Opinion and Award. A copy of the Arbitrator's Opinion and Award is attached to Plaintiff's Complaint as Exhibit B (Doc. 1-3). Arbitrator Buchheit sustained in part and denied in part the Robbins Grievance and issued the following Award:

3

AWARD

The grievance is sustained in part and denied in part. For the sustained portion of the grievance, the Employer shall reinstate the Grievant to her former position with full seniority but without back pay or other benefits lost as a result of her termination.

(Doc. 1-3 at 37).

Arbitrator Buchheit wrote in support of his Award:

In short, the Grievant's termination occurred in the absence of the Employer making proper compliance with Section 5.2. The Grievant should have been afforded a "disciplinary interview", with all rights attached to such an interview, including the right to be informed that she could have a Union Delegate present during the interview, and to have such a Delegate present during the interview.

I reject the Employer's assertion that my finding that the Grievant was entitled to a disciplinary interview is a determination beyond my authority, as it results from my rewriting of the Contract. To the contrary, my conclusion results from the application of the clear and unambiguous language contained in Section 5.2. All I do is enforce the rights the Grievant had in this provision, nothing more nothing less.

Given that the Grievant was not afforded the procedural rights to which she was entitled under Section 5.2, I cannot find that just cause existed for the Grievant's termination. It follows that the Union has won the Grievant the right to be reinstated to her former position with full seniority.

I cannot, however, reinstate the Grievant with any back pay or other benefits suffered as a result of her termination. As stressed by the Employer, sleeping on duty is a serious offense. It is particularly serious in this instance, as the Employer has a specific rule against sleeping on duty, and the Grievant had within the previous year been suspended for sleeping on duty. . . .

(Doc. 1-3, at 35-36).

The Union seeks enforcement of the Arbitrator's Award, including the reinstatement of the Grievant, payment of back pay from the date she should have been reinstated until the date of her actual reinstatement, pre-judgment interest on such back wages and an award of attorneys' fees and costs on the basis that the Hospital's failure and refusal to abide by the Buchheit Award is unjustified. The Union notes that the Employer did not file an action to vacate, modify or correct the Buchheit Award and it asserts that it is now precluded from challenging the Award or the Arbitrator's findings. (Compl. at ¶ 34).

On December 30, 2013, the Hospital filed its Answer and Affirmative Defenses to the Complaint. (Doc. 9). The Hospital admits the material allegations of Plaintiff's Complaint and, in particular, admits "that the Hospital did not move to vacate, modify or correct the Award of Arbitrator Buchheit." (*Id.* at ¶ 28). The Hospital has denied, however, that the Union is entitled to enforcement of the Buchheit Award and has asserted four affirmative defenses as follows: (1) "The award of reinstatement is contrary to Pennsylvania public policy which precludes its enforcement";(2) "[t]he arbitrator exceeded his jurisdiction under the CBA, thereby precluding enforcement of the award"; (3) "[t]he award is contrary to the essence of the CBA, thereby precluding its enforcement"; and (4) "the award of reinstatement is unconscionable, thereby precluding its enforcement." (Doc. 9, at 5)

On February 26, 2014, after consultation with counsel for the parties at a case management conference, the Court entered an Order (Doc. 13) that the Plaintiff file a

motion for judgment on the pleadings on or before March 10, 2014 with briefing to be in accordance with Local Rules 7.5, 7.6 and 7.7. The Order further provided that "[s]hould the motion for judgment on the pleadings be denied, cross-motions for summary judgment shall be filed as to the validity and enforceability of the arbitration award at issue within 30 days of the court's order." (*Id.*). On March 7, 2014, SEIU filed its Motion For Judgment on the Pleadings (Doc. 15). The Motion has been fully briefed and is now ripe for disposition. For the reasons that follow, the Court will grant the Union's Motion For Judgment on the Pleadings as to the Hospital's second, third and fourth affirmative defenses and will direct the parties to file cross-motions for summary judgment as to the Hospital's assertion in its first affirmative defense that the Buchheit Award violates an explicit public policy.

In light of the Court's ruling, resolution of the issues of the Union's claim for back pay and its request for attorneys' fees must necessarily be deferred until the validity of the Buchheit Award is fully determined.

## II. Statement of Facts Alleged By Plaintiff
## Which Have Been Admitted By Defendant

The following is a statement of the averments of the Plaintiff's Complaint (Doc. 1) which have been admitted by the Defendant in its Answer (Doc. 9):

SEIU is the exclusive representative of several units of employees employed by Defendant, Regional Hospital of Scranton, in an industry affecting commerce within the meaning of the LMRA, 29 U.S.C. §§ 142, 152 and 185(a).

The Hospital is a corporation which operates an acute care hospital located at 746 Jefferson Avenue, Scranton, PA 18510. The employees represented by Plaintiff SEIU work at the hospital.

SEIU and the Hospital are parties to a collective bargaining agreement (Doc. 1-2) whose term was from November 10, 2011 through February 28, 2013. This CBA was in effect at all times material to this action.

While the CBA has expired, the parties are operating under the terms of the CBA, consistent with applicable labor law, while they continue to bargain for a successor agreement.

The CBA has a grievance and arbitration procedure which provides for the submission of disputes between the parties to arbitration. Specifically, Section 4.1 of the CBA provides:

> A grievance shall be defined as a dispute or complaint arising between the parties hereto, under or out of this Agreement or the interpretation, application, or any alleged breach thereof, and shall be processed and disposed of in the following manner:
>
> Step One – Within twenty (20) calendar days of the time an employee first becomes aware or should have become aware of the occurrence giving rise to the grievance (except as provided in Section 4.11 of this Article), an employee having a grievance and/or his Union delegate shall file a grievance in writing with his/her immediate supervisor. The Hospital shall give its answer to the employee and/or his/her Union delegate or other representative within ten (10) calendar days after the presentation of the grievance in Step One.
>
> Step Two – If the grievance is not settled in Step On[e], the grievance may, within ten (10) calendar days after the answer in Step One, be presented in Step Two. When grievances are presented in Step Two, they shall be

reduced to writing, signed by the grievant and his/her Union representative, and presented to the grievant's department head or his/her designee. A grievance so presented in Step Two shall be answered by the Hospital in writing within ten (10) calendar days after its presentation.

Step Three – If the grievance is not settled in Step Two, the grievance may, within ten (10) calendar days after the answer in Step Two, be presented in Step Three. A grievance shall be presented in this Step to the Director of Human Resources or Vice President of Human Resources, or their respective designee. Unless mutually agreed otherwise, the parties agree to meet to discuss the grievance within fifteen (15) calendar days after the timely presentation of the grievance at Step Three. The Director of Human Resources or Vice President of Human Resources, or their respective designee shall render a decision in writing within fifteen (15) calendar days after the presentation of the grievance in this Step, or the Step Three meeting, whichever is later.

Failure on the part of the Hospital to answer a grievance at any step shall not be deemed acquiescence thereto, and the Union may proceed to the next step.

Anything to the contrary herein notwithstanding, a grievance concerning a discharge or suspension may be presented initially at Step Three in the first instance, within the time limit specified in Section 4.11 of this Article.

A grievance on behalf of the Hospital may be presented initially at Step Three by notice in writing addressed to the Union at its offices.

(Doc. 1-2 at 5-6).

Further, Section 4.3 of the CBA provides:

A grievance, as defined in this Article, which has not been resolved thereunder may, within fifteen (15) calendar days after completion of Step Three of the grievance procedure, be referred to arbitration by the Union by filing a written Demand for Arbitration with the American Arbitration Association, a copy of which shall be sent simultaneously to the Hospital. An Arbitrator shall be chosen in accordance with the Rules and Regulations of the American Arbitration Association.

(*Id.* at 7).

Section 4.6 of the CBA provides:

The award of an arbitrator hereunder shall be final, conclusive and binding upon the Hospital, the Union and the employees including all disputes regarding Management's application of the Americans with Disabilities Act.

(*Id.*).

Further, Section 4.11 of the CBA provides:

The Union may elect to contest the discharge or suspension of any employee but must give written notice thereof to the Director of Human Resources (or his designee) within seven (7) calendar days after receipt of the notice of discharge or suspension. In such event, the issue shall thereafter be submitted at Step Three of the grievance and arbitration procedure heretofore set forth.

(*Id.* at 8).

The CBA also contains provisions governing discipline of employees represented by SEIU. Specifically, Section 5.1 states that "The Hospital shall have the right to discharge, suspend or discipline any employee for just cause." (*Id.*).

Section 5.2 of the CBA further elaborates on discipline and provides:

Where an employee is to be suspended or discharged, and the employee is required to attend a disciplinary interview, no disciplinary action shall be imposed until after the interview. The parties recognize that while a disciplinary interview normally precedes a suspension or discharge, there are circumstances which reasonably require immediate disciplinary action prior to such interview. Any employee required to attend a disciplinary interview or meeting shall be notified of their right to have a Union Delegate present at such interview or meeting and shall be given reasonable advanced notice of the time, place and nature of the meeting and shall be provided the right to have a Union representative accompany them. All discipline shall be carried

9

out as soon as is reasonably possible after the Employer becomes aware of the facts giving rise to the discipline in question.

(*Id.*).

Section 5.3 of the CBA provides that "[t]he Hospital and the Union agree that progressive discipline should not be imposed where the previously disciplinary action was more than one (1) year ago." (*Id.*).

Roberta Robbins was an employee of the Hospital from November 2002 to February 2012. She worked in the Hospital's Imaging Department. Ms. Robbins was in a unit of employees represented by SEIU and covered by the CBA.

On February 1, 2012, the Hospital suspended Roberta Robbins contending that Ms. Robbins had been sleeping on duty.

On February 3, 2012, the Hospital wrote a letter to Roberta Robbins terminating her employment claiming she had been sleeping on duty during the night of February 1, 2012.

On or about February 7, the Union filed a grievance at Step 3 of the grievance procedure protesting the termination of Roberta Robbins (the "Grievant'). The grievance stated as follows: "Employer in violation of, but not limited to, Article 5.1, 5.2, 5.3 – just cause, and the employee was not present at any disciplinary interview, and termination was imposed without the interview." (Compl. at ¶ 17).

The Robbins grievance was not resolved and, pursuant to the terms of the CBA, SEIU referred the grievance to arbitration.

Pursuant to the applicable provisions of the CBA, Arbitrator Scott E. Buchheit was appointed to serve as the neutral arbitrator to decide the Union's grievance.

A hearing was held before Arbitrator Buchheit on December 11, 2012 in Scranton, Pennsylvania, at which hearing SEIU and the Hospital were permitted to present evidence and testimony with respect to the grievance. Thereafter, the parties submitted briefs in support of their respective positions.

On April 26, 2013, Arbitrator Buchheit issued his Opinion and Award (Doc. 1-3) with respect to the Union's grievance over the termination of Roberta Robbins.

The Arbitrator's Award provides as follows:

### AWARD

The grievance is sustained in part and denied in part. For the sustained portion of the grievance, the Employer shall reinstate the Grievant to her former position with full seniority but without back pay or other benefits lost as a result of her termination.

(Doc. 1-3 at 37).

By letter dated June 5, 2013, the Hospital, by its attorneys, requested in a written motion that Arbitrator Buchheit reconsider his Award, specifically the portion awarding the Grievant reinstatement to employment at the Hospital.

The Union submitted a written opposition to the Employer's request for reconsideration.

By letter dated June 13, 2013 (Doc. 1-4), the Arbitrator denied the Hospital's motion for reconsideration.

11

The Hospital has failed to move, in a court of competent jurisdiction, for an order vacating, modifying or otherwise correcting the Award of Arbitrator Buchheit.

SEIU has demanded that the Hospital comply with Arbitrator Buchheit's Award by reinstating Grievant Robbins to her former position with full seniority.

To date, the Hospital has failed and refused to reinstate Ms. Robbins to her prior position.

While employed at the Hospital, the Grievant regularly worked forty (40) hours per week. The Union and Hospital disagree as to whether the Grievant's rate of pay was $29.50 per hour or $29.30 per hour. They agree the Grievant was entitled to an additional $1.00 per hour for shift differential and $1.00 per hour for charge differential.

### III. Standard of Review

Under Federal Rule of Civil Procedure 12, judgment on the pleadings is only appropriate in favor of the moving party when they "clearly establish[ ] that no material issue of fact remains to be resolved" such that they are "entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir.2008) (internal quotation omitted). When reviewing a motion for judgment on the pleadings, a court must view the facts in the plaintiff's complaint as true and draw all reasonable inferences in the plaintiff's favor. *Allah v. Al-Hafeez*, 226 F.3d 247, 249 (3d Cir. 2000); *Snyder v. Daugherty*, 899 F.Supp.2d 391, 396 (W.D. Pa. 2012). In other words, a district court applies the same standard to a judgment on the pleadings as a motion to dismiss pursuant to Rule 12(b)(6), but may also review the

answer and instruments attached to the pleadings. *Brautigam v. Fraley*, 684 F.Supp.2d 589, 591–92 (M.D. Pa. 2010). Accordingly, we shall utilize the same process we use to determine the sufficiency of a complaint when analyzing a motion to dismiss for failure to state a claim.

## IV. Analysis

Here, the Hospital has admitted that it did not move to vacate the Buchheit Arbitration Award during the 30-day period prescribed by the Pennsylvania Arbitration Act, 42 Pa. C.S.A. § 7314, or at any time thereafter. (Compl. at ¶ 28; Answer at ¶ 28). The Hospital further acknowledges in its Brief in Opposition to the Union's Motion for Judgment on the Pleadings that "the Union is correct that Regional did not move to vacate the Arbitration Award at issue during the short, 30-day, time frame of the Pennsylvania Arbitration Act, 42 Pa. Stat. Ann. § 7341 . . . ." (Doc. 20 at 1). In *Service Employees International Union, Local No. 36 v. Office Center Services, Inc.*, 670 F.2d 404 (3d Cir. 1982), the Circuit squarely addressed the question of whether affirmative defenses which are in the nature of grounds for vacating an arbitration award may be raised in a proceeding to confirm the award under Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, where there has been a failure to move to vacate the unfavorable award within the limitations period prescribed for actions to vacate. The Circuit Court held that the failure to move to vacate an arbitration award within the prescribed period for doing so bars the

assertion of objections which could have been raised in a motion to vacate, modify or

correct the award in a subsequent proceeding brought to confirm the award:

> Accordingly, we hold that in a section 301 proceeding to confirm a labor
> arbitration award the relevant state statute of limitations is applied, and, under
> the Pennsylvania statute applicable at the time of this action, the failure to
> raise objections within three months which could have been raised in a
> motion to vacate, modify or correct the award bars raising them in
> confirmation proceedings held thereafter.

*Office Ctr. Svcs.,* 670 F.2d at 412.

The Circuit reaffirmed its holding in *Office Center Services, Inc.* in *Service*

*Employees International Union, Local 36 v. City Cleaning,* 982 F.2d 89 (3d Cir. 1992). In

*City Cleaning,* the Court recognized that under Pennsylvania law, the Pennsylvania statute

governing actions to vacate, modify or correct a labor arbitration award, 42 Pa. C.S.A. §

7314, required that such an action be filed within 30 days of the issuance of the award. *City*

*Cleaning,* 982 F.2d at 93.

Further, the Court, citing its prior decision in *Office Center Services, Inc.* reiterated:

> [I]f a defendant has important defenses to an arbitration award, he should
> raise them within the period prescribed for actions to vacate rather than wait
> to raise them as defenses in a confirmation proceeding.

*Id.*

In applying this rule, the Court rejected City Cleaning's argument that the arbitration

award was rendered unenforceable by the settlement of an unfair labor practice

complaint filed by the National Labor Relations Board ("NLRB") brought against the union

on the basis that the award violated public policy because the award imposed upon City

14

Cleaning's employees "terms and conditions of employment bargained for by a union which does not represent them." *Id.* at 92.

The Court affirmed the District Court's determination that City Cleaning had failed to raise the issue of the settlement of the unfair labor practice charges brought against the Union in a timely motion to vacate, modify or correct the grievance committee's award, stating: "We agree with the district court that no exceptional circumstances exist which would permit it to relax the rule we announced in *Service Employees v. Office Center Services.*" *Id.* at 94.

The rule established in *Office Center Services* that a party who fails to bring an action to vacate, modify or correct an arbitrator's award within the period prescribed by law is barred from raising objections to the award in a subsequent confirmation proceeding which could have been raised by such an action has been consistently followed in this Circuit.

More recently, in *United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union v. Neville Chemical Company,* 298 Fed.App'x. 209 (3d Cir. 2008), an arbitrator determined that the employer, Neville, did not have proper cause to discharge an employee on whose behalf the Union filed grievances. The arbitrator ruled that while Neville had proper cause to discipline the employee for the second of the two incidents which formed the basis for his discharge, the employer lacked proper cause for the first of the two suspensions it imposed on the employee. It therefore

15

reduced the employee's discharge to a 3-day suspension without pay and directed the

employer to reinstate the employee and make him whole until his reinstatement. *Neville*

*Chemical,* 298 Fed.App'x. at 211.

The Union moved to enforce the arbitration award and the District Court granted

summary judgment in its favor.

On appeal, the employer argued that the District Court committed "legal error" in

entering summary judgment in favor of the Union because the employee reinstated by the

arbitration award was physically unable to return to work, having made a claim for Workers'

Compensation benefits on the basis that he was totally disabled. *Id.*

The Court of Appeals affirmed the District Court's enforcement of the award directing

the employee's reinstatement, relying on its decision in *City Cleaning Company:*

> As the District Court concluded, Neville waived these arguments. An
> employer's failure to raise defenses to the enforcement of an arbitration
> award in a timely motion to vacate or modify the award bars it from raising
> them thereafter. *See, Serv. Employees Int'l Union, Local 36 v. City Cleaning
> Company,* 982 F.2d 89, 93 (3d Cir. 1992). As Neville failed to bring an action
> to modify, vacate or correct the arbitration award within thirty days as required
> under Pennsylvania law, it is precluded from arguing that it was unable to
> reinstate McCann [the Grievant] due to physical inability and that it cannot be
> ordered to pay back pay.

*Id.*

The Court of Appeals further noted that "[t]he District Court's Award of back pay from

the time McCann was discharged does not grant a permanent light duty position. It merely

enforces the arbitration award." *Id.*

Further, the district courts which have been confronted with the issue presently before this Court have uniformly followed the rule of *Office Center Services* and *City Cleaning*. *See, e.g., Int'l Union of Operating Engineers, Local 542 v. Williams Equip. Corp.,* 2006 WL 2726839 (E.D. Pa. 2006); *Local 863 Int'l Brotherhood of Teamsters v. Supermarket Distribution Servs, Inc.,* 2008 WL 877855 (D. N.J. 2008); *Int'l Union of Bricklayers and Allied Craftworkers, Local 5 v. Inter-state Tile & Mantel Co., Inc.,* 2008 WL 3245464 (M.D. Pa. 2008); and *Local 966 Int'l Brotherhood of Teamsters v. JCB, Inc.,* 2013 WL 1845607, at *3 (D. N.J. 2013) (citing the Third Circuit's statement in *Office Center Services*: "[I]f a defendant has important defenses to an arbitration award he should raise them within the period prescribed for actions to vacate rather than wait to raise them as defenses in a confirmation proceeding.").

With the governing law having been clearly established in *Office Center Services* and *City Cleaning,* the question before this Court is whether the affirmative defenses raised by the Hospital in this enforcement proceeding are barred from assertion by virtue of the Hospital's failure to timely move to vacate, modify or correct the Buchheit Arbitration Award. The employer's second, third and fourth affirmative defenses will be addressed first. The Hospital's second affirmative defense asserts that the Arbitrator exceeded his jurisdiction under the Collective Bargaining Agreement, thereby precluding the enforcement of the Award. The third affirmative defense asserted by the Hospital is that the Award is contrary

17

to the essence of the Collective Bargaining Agreement. The fourth affirmative defense

asserted by the Hospital is that the award of reinstatement is unconscionable. (Doc. 9 at 5).

These defenses are indisputably defenses which could have been raised by the

Hospital in a timely proceeding to vacate, modify or correct the Award in question. In *United*

*Paper Workers International Union, AFL-CIO v. Misco, Inc.,* 484 U.S. 29, 108 S.Ct. 364, 98

L.Ed.2d 286 (1987), the United States Supreme Court restated the standard of review of a

labor arbitrator's award which was initially enunciated in *United Steelworkers of America v.*

*Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). In so

doing, the Court left no question that defenses such as those raised by the Hospital in its

second, third and fourth affirmative defenses should be raised in a complaint to vacate the

arbitration award.

The Court, in *Misco,* carefully delineated the highly circumscribed scope of review of

an arbitrator's award:

> Collective bargaining agreements commonly provide grievance procedures to
> settle disputes between union and employer with respect to the interpretation
> and application of the agreement and require binding arbitration for unsettled
> grievances. In such cases, and this is such a case, the court made clear
> almost 30 years ago that the courts play only a limited role when asked to
> review the decision of an arbitrator. The courts are not authorized to
> reconsider the merits of an award even though the parties may allege that the
> award rests on errors of fact or on misinterpretation of the contract. "The
> refusal of courts to review the merits of an arbitration award is the proper
> approach to arbitration under collective bargaining agreements. The federal
> policy of settling labor disputes by arbitration would be undermined if courts
> had the final say on the merits of awards." *Steel Workers v. Enterprise Wheel*
> *& Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960).
> As long as the arbitrator's award "draws its essence from the collective

bargaining agreement" and is not merely "his own brand of industrial justice," the award is legitimate. *Id.* at 597, 80 S.Ct. at 1361.

> "The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.
>
> The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. *Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 567-568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960) (emphasis added; footnote omitted)."

484 U.S. at 36-37.

The Court in *Misco* continued:

> Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. To resolve disputes about the application of a collective bargaining agreement, an arbitrator must find facts and a court may not reject those facts simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract. The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract. *Enterprise Wheel, supra,* 363 U.S. at 599, 80 S.Ct. at 1362. So, too, where it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect. . . . As the court has said, the arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own

notions of industrial justice. But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

*Id.* at 38.

Thus, the Hospital's assertions that the arbitrator exceeded his jurisdiction under the CBA, that the Award is contrary to the essence of the CBA and that the Arbitrator's remedy of reinstatement is unconscionable present defenses to the enforcement of the Award which, while subject to the narrow standard of review reaffirmed in *Misco*, are defenses which could have and should have been raised in a timely proceeding by the Hospital to vacate, modify or correct the Buchheit Award. Whether the Arbitrator exceeded his jurisdiction as well as whether his Award draws its essence from the Collective Bargaining Contract are matters which could properly have been raised in a timely complaint to vacate the Buchheit Award, since these are defenses which the Supreme Court in *Misco* has recognized as proper bases on which to review an arbitrator's decision.

Likewise, the Arbitrator's selection of a remedy, while subject to the same narrow standard of review as his decision on the merits of the grievance, presents a matter that *Misco* recognizes as being reviewable by a motion to vacate. Thus, it is this Court's view that the Hospital's second, third and fourth affirmative defenses present matters which could have and should have been raised in a timely motion to vacate, modify or correct the Arbitration Award in question so that the Hospital's failure to do so bars it from asserting these defenses in the context of the Union enforcement proceeding in this Court.

20

Accordingly, the Union's Motion for Judgment on the Pleadings will be granted in part and judgment will entered in favor of the Union with respect to the Hospital's second, third and fourth affirmative defenses.

Whether the Hospital is barred from asserting its first affirmative defense, that the award of reinstatement is contrary to Pennsylvania public policy, presents a more difficult question.

As the Hospital has argued, the Court in *City Cleaning Company,* while reaffirming the rule in *Office Center Services* that "if a defendant has important defenses to an arbitration award, he should raise them within the period prescribed for actions to vacate rather than wait to raise them as defenses in a confirmation proceeding," 982 F.2d at 93, nonetheless addressed the merits of the employer's assertion in that case that the arbitration award at issue there violated an explicit public policy.

The Court in *City Cleaning Company,* citing *Misco,* recognized that the public policy exception as set forth in that case "is slim indeed." *Id.* at 92. It further noted that the Supreme Court, in *Misco,* made clear that its prior decision in *W.R. Grace Co. v. International Rubber Workers Union,* 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed. 298 (1983), "does not . . . sanction a broad judicial power to set aside arbitration awards as against public policy." *City Cleaning Co.,* 982 F.2d at 92 (quoting *Misco,* 484 U.S. at 43).

The Court, following *Misco,* made clear that there must be an explicit conflict between the arbitration award and an explicit policy that is "well defined and dominant and

[can be] ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Id.* (quoting *W. R. Grace Co.*, 461 U.S. at 766). The Court acknowledged, however, that, as stated in *W.R. Grace Company,* "[a]s with any contract, however, a court may not enforce a collective bargaining agreement that is contrary to public policy." *Id.* (citing *W.R. Grace Co.*, 461 U.S. at 765-766).

The Court then addressed the employer's public policy argument, stating that it agreed with the District Court "that *City Cleaning* has failed in its burden of proving that this particular award violates an explicit public policy." *Id.* The Court further noted that "[t]he district court determined that 'City Cleaning has not shown whether the employment terms vitally affect the unit employees, and it therefore, has not shown an explicit conflict with a public policy.' We likewise find in this record no conflict." *Id.*

There is, seemingly, an internal inconsistency in the decision in *City Cleaning*. The company's contention that the arbitration award violated public policy was based on a claim that the award imposed terms and conditions of employment on City Cleaning's employees which were bargained for by a union which did not represent them. This assertion, as noted above, was rejected by the District Court and the Court of Appeals but only after an analysis of whether public policy was in fact violated by the grievance committee's ruling.

Yet, the Court found that the settlement of the unfair labor practice charges brought against the union through the NLRB presented a defense which should have been raised in a timely motion to vacate, modify or correct the grievance committee's award and was thus

barred from assertion by the employer in the confirmation proceeding. The unfair labor practice charges brought against the union raised the same issue as was raised by the employer in its public policy argument, i.e., that the union had unlawfully insisted that it "would only represent employees under a BOLR-type agreement." *Id.* at 91. The union was a party to a collective bargaining agreement with a management organization entitled Building Operator's Labor Relations, Inc. ("BOLR"). The union had been a party to a collective bargaining agreement with the Building Maintenance Contractor's Association (the BMCA Agreement) as well. And while the BMCA Agreement permitted City Cleaning to provide services to facilities governed by the provisions of the BOLR Agreement, such work was conditioned on the employer's adherence to the terms and conditions of the BOLR contract. Thus, when City Cleaning informed the union that it was willing to enter into a BMCA-type contract for its workers at the Mellon Independence Center Building, the union rejected this offer, arguing that the work at Mellon had been previously performed under the BOLR contract and that the union would, therefore, only represent employees under a BOLR type agreement. These facts are the source of both the employer's public policy exception, which the Court addressed on its merits, as well as the unfair labor practice charges brought against the union, whose settlement was rejected by the Court as a defense because it determined that it should have been raised in a timely motion to vacate, modify or correct.

The above discussion, however, does not overcome the fact that the Court in *City Cleaning Company* did address the merits of the employer's claim that the arbitration award in question violated an explicit public policy.

Moreover, since the decision in *City Cleaning Company,* the Third Circuit has not spoken to resolve the apparent conflict between its directive that "if a defendant has important defenses to an arbitration award, he should raise them within the period prescribed for actions to vacate rather than wait to raise them as defenses in a confirmation proceeding," and its consideration on the merits of the employer's public policy defense in *City Cleaning Company.*

The cases cited by the Hospital do little to resolve this question and several do not address the issue at all. The decision in *Extendicare Health Services, Inc. v. District 1199P, SEIU,* 532 F.Supp.2d 713 (M.D. Pa. 2006), was resolved on cross-motions for summary judgment by the plaintiff employer and defendant union, with the sole issue being whether the reinstatement of an employee to her position in a personal care home was contrary to public policy, specifically the Older Adult Protective Services Act and the laws governing the licensing of personal care homes under the Public Welfare Code of Pennsylvania, 62 Pa. C.S.A. § 1001, *et seq.* The Court's decision granting summary judgment to the union does not cite to *Office Center Services* or *City Cleaning Company* and the Court did not have before it any claim that the plaintiff employer had failed to timely move to vacate, modify or correct the arbitration award at issue.

Similarly, the decision in *Professional Administrators Ltd. v. Kopper-Glo Fuel, Inc.,* 819 F.2d 639 (6th Cir. 1987), presents an application of *Office Center Services, Inc.* in which the appellants, Kopper-Glo Fuel, Inc. and Double Q, Inc., argued on appeal of the District Court's confirmation of an arbitration award that the Trustees of the Southern Labor Union Welfare Fund and Pension Fund should not have submitted their claims to arbitration, that "the Arbitrator's Award was improper on the merits, that the Arbitrator should have considered the actuarial justification for the Trustees' actions, and that an award that permits the Trustees to increase contributions violates federal labor policy." *Kopper-Glo Fuel,* 819 F.2d at 642. As to each of these claims, including the claim that the award violated federal labor policy, the Court held:

> Appellants cannot raise these defenses because they failed to move to vacate the arbitration award. Several courts of appeals have held that 'if a defendant has important defenses to an arbitration award he should raise them within the period prescribed for actions to vacate rather than wait to raise them as defenses in a confirmation proceeding.' *Service Employees Int'l Union, Local 36, v. Office Center Services, Inc.,* 670 F.2d 404, 412 (3d Cir. 1982) (remainder of citations omitted).

*Id.*

Further, the Court observed that "an action to confirm the award should be a summary proceeding, not a proceeding in which the defendant seeks affirmative relief." *Id.*

Nonetheless, the Court in *Kopper-Glo* then proceeded to determine whether the arbitration award was unenforceable as contrary to public policy, citing *W.R. Grace & Company v. Local 759.* The Court of Appeals then reversed the District Court's decision and

vacated the arbitration award, finding that "an award proving a unilateral increase in contribution rates is contrary to federal labor policy underlying mandatory collective bargaining." *Id.* at 644.

Again, like *City Cleaning Company,* the Court did not reconcile its rejection of the employers' defenses as untimely raised, including the defense that "an award that permits the Trustees to increase contributions violates federal labor policy," *id.* at 642, with its determination that the award was unenforceable because it approved a unilateral increase in contribution rates which the Court found "contrary to federal labor policy underlying mandatory collective bargaining," *id.* at 644.

*Sheet Metal Employers Industry Promotion Fund v. Absolute Balancing Co., Inc.,* 884 F.Supp.2d 617 (E.D. Mich. 2012), was an action brought by employee benefit trust funds to confirm arbitration awards entered against the defendants for breaches of a collective bargaining agreement. Pursuant to the CBA, grievances were submitted to the Local Joint Adjustment Board ("LJAB") for final and binding arbitration. The LJAB issued decisions finding that the defendants had violated the collective bargaining agreement by failing to contribute to the Promotion Fund and Reimbursement Fund. The defendants did not comply with the decisions and did not move to vacate them. The District Court found that the defendants' "ability to challenge the LJAB decisions is procedurally and substantively foreclosed." *Sheet Metal Employers Industry Promotion Fund,* 884 F.Supp.2d at 621 (citing *Occidental Chemical Corp. v. Int'l Chemical Workers Union,* 853 F.2d 1310,

1314 -15 (6th Cir. 1988); *Kopper-Glo Fuel,* 819 F.2d at 642-643). The Court reached its decision based upon the failure of the employer to timely file an action to vacate the award, thus precluding a later challenge by the employer during "a subsequent action brought by the union to enforce the award on any similar grounds that could have been raised in a timely action to vacate." *Id.* at 621.

The District Court, however, held that "while defendants are foreclosed from attacking the LJAB decisions, the Court's review of the LJAB decisions does not end here. Even though defendants failed to timely move to vacate the award, the Court must determine if enforcing the CBA is contrary to public policy." *Id.* (citing *W.R. Grace & Co.,* 461 U.S. at 766; *Eastern Associated Coal Corp. v. United Mine Workers of Am.,* 531 U.S. 57, 63, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000)).

The Court then denied the Trust Fund's motion for summary judgment, stating that "it is against well defined public policy to apply the CBA against any party that is not a signatory to it." *Id.* at 625.

The Court denied the plaintiff's motion for reconsideration characterizing its decision as "based on a narrow exception" to the rule that the failure to file a motion to vacate, modify or correct an arbitration award precludes the assertion of any defenses which could have been raised in such an action in a subsequent confirmation proceeding.

These cases provide little guidance to this Court in determining whether the Hospital is precluded from asserting its first affirmative defense as it has been precluded from raising

its second, third and fourth affirmative defenses because of its failure to move to vacate, modify or correct the Buchheit Arbitration Award.

This Court is concerned that the rule of *Office Center Services* and *City Cleaning Company* may be swallowed by an exception for challenges to labor arbitration awards based on an alleged violation of "public policy." That is to say, there is a danger that the labor arbitration process will be undermined by the ability of an employer unwilling to comply with an unfavorable arbitration award to style any objection it has to the award as one grounded in a claim that the award violates an explicit public policy, and thereby free itself from the requirement that it timely move to vacate the award. This is so even though, as the Court noted in *Misco* and in *City Cleaning Company,* the public policy exception "is slim indeed." *Id.* at 92.

Nonetheless, this Court is reluctant to determine the enforceability of the Buchheit Arbitration Award without providing the Hospital with an opportunity to submit its argument in support of its claim that the reinstatement of the Grievant violates Pennsylvania public policy. Not to allow the Hospital to do so would result in a decision enforcing the Award while the question of whether it violates an explicit public policy under *Misco* and *Eastern Coal Associated Operators* will not have been addressed at the District Court level.

This approach finds support in *City Cleaning Company,* where, as previously noted herein, the Court addressed the merits of the employer's claim that the arbitration award in question in that case violated an explicit public policy, even though the employer had not

28

moved to vacate, modify or correct the award within the period prescribed by applicable law. For these reasons, the Court will order the parties to file cross-motions for summary judgment limited to the issue of whether the reinstatement of the Grievant by the Buchheit Arbitration Award is contrary to Pennsylvania public policy which precludes its enforcement.

Further, while the Court wishes to emphasize that it expresses no opinion whatsoever on the Hospital's claim that reinstatement of the Grievant in this case is contrary to Pennsylvania public policy, it does find it necessary to also order the parties to separately brief an issue which will arise if, and only if, the Grievant's reinstatement by the Buchheit Arbitration Award is found not to violate Pennsylvania public policy. That issue is whether this Court would then have jurisdiction to determine the amount of back pay, if any, to which the Grievant is entitled from the date she should have been reinstated or whether this issue should properly be resolved via the grievance-arbitration procedure of the parties' Collective Bargaining Agreement. See, generally, United Food & Commercial Workers Union, Local 1776 v. Excel Corp., 470 F.3d 143 (3d Cir. 2006); see also, Article 4, Section 4.1, of the Collective Bargaining Agreement between the Hospital and the Union. (Doc. 1-2 at 5) (defining a grievance as "a dispute or complaint arising between the parties hereto under or out of this Agreement or the interpretation, application or any alleged breach thereof . . . .).

Accordingly, the Court will grant, in part, the Union's Motion For Judgment on the Pleadings and will order the parties to file cross-motions for summary judgment with respect

to the Hospital's claim that reinstatement of the Grievant would violate or be contrary to Pennsylvania public policy.

A separate Order follows.

Robert D. Mariani
United States District Judge